UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 18-68** |
| **CHRISTOPHER MAZUR** | **SECTION I** |

## ORDER & REASONS

Before the Court is defendant Christopher Mazur's ("Mazur") motion[1] to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The government opposes the motion.[2] For the following reasons, the motion is denied.

### I.

On July 26, 2018, Mazur appeared before this Court and pled guilty to count two of the indictment, which charged him with possession of firearms and ammunition by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(9), and 924(a)(2).[3] Mazur was a prohibited person pursuant to § 922(g) because he was previously convicted of a crime punishable by a term of imprisonment exceeding one year[4] and a misdemeanor crime of domestic violence.[5] *See* 18 U.S.C. § 922(g)(1), (9). On October 18, 2018, the Court sentenced Mazur to twenty-four months in the

---

[1] R. Doc. No. 81.
[2] R. Doc. No. 85.
[3] R. Doc. No. 1, at 2–3; R. Doc. No. 40.
[4] Mazur was convicted of attempted manslaughter in violation of La. R.S. § 14:27 and La. R.S. § 14:31 and possession of a controlled substance in violation of MS. St. § 41-29-139(c)(2). R. Doc. No. 1, at 2–3.
[5] *Id.*

custody of the Bureau of Prisons ("BOP") and a three-year term of supervised release.[6] Mazur's sentence was below his United States Sentencing Guidelines ("Guidelines") range of 46 to 57 months.[7]

Mazur filed the instant motion for a sentence reduction under the First Step Act of 2018 on April 19, 2020.[8] Mazur requests that the Court grant him compassionate release or, alternatively, that the Court order an early release to home confinement.[9] Mazur suffers from myeloid leukemia and hypertension, which he alleges puts him at risk of severe illness if he contracts COVID-19.[10] Mazur avers that compassionate release is justified because his medical condition combined with the threat of COVID-19 constitutes an "extraordinary and compelling reason" under 18 U.S.C. § 3582(c)(1)(A)(i).[11] Mazur further contends that the 18 U.S.C. § 3553(a) factors weigh in favor of compassionate release because he has already served fourteen months in prison including good conduct time earned, his continued incarceration would not serve the goals of sentencing, a reduction in his sentence would not create unwarranted sentencing disparities, and he does not pose a danger to the safety of any other person or the community if released.[12]

---

[6] R. Doc. No. 69, at 2–3.
[7] R. Doc. No. 48, at 18 ¶ 79.
[8] R. Doc. No. 81.
[9] *Id.* at 6. Mazur also notes that he could be released to a halfway house if he is awarded additional months of halfway house time pursuant to the Second Chance Act of 2007. R. Doc. No. 81-5, at 9.
[10] R. Doc. No. 81, at 3.
[11] R. Doc. No. 81-5, at 6–7.
[12] *Id.* at 8–9.

## II.

In relevant part, 18 U.S.C. § 3582(c)(1)(A)(i) provides that a court may not modify a term of imprisonment unless a motion is made after the prisoner has exhausted his administrative remedies and the court, after considering the factors set forth in 18 U.S.C. § 3553(a), finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The Sentencing Commission's relevant policy statement provides that extraordinary circumstances exist when the defendant suffers from a terminal illness or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

Although, historically, sentence reductions could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to additionally allow prisoners to petition the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act and, consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as

3

amended. The relevant policy statement continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the BOP upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. U.S.S.G. § 1B1.13 cmt. n.4. This discrepancy has been recognized by many courts. *See United States v. Perdigao,* 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (collecting cases).

Many courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). These district courts have found that they have discretion to determine what constitutes "extraordinary and compelling reasons" on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive. *See id.* ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.").

Accordingly, the Court will consider whether Mazur has presented the Court with evidence that "extraordinary and compelling reasons" warrant compassionate release and that he does not pose a danger to the safety of any other person or the community, all in light of the § 3553(a) factors.

### A. Exhaustion of Administrative Remedies

Section 3582 allows a court to consider a defendant's motion for modification of a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). As the government concedes, this requirement is clearly satisfied.[13]

Mazur submitted a written request to the warden of his facility for a reduction in sentence based on compassionate release, and the warden acknowledged receipt of such request on March 26, 2020.[14] The warden denied the request on March 31, 2020, finding that Mazur was receiving the appropriate medical care and treatment by the facility's health services staff.[15] Mazur's counsel appealed the denial on April 13, 2020 via a written letter, to which neither Mazur nor his counsel has received a response.[16] Although Mazur has not exhausted his administrative remedies, more than thirty

---

[13] *See* R. Doc. No. 85, at 3–4.
[14] R. Doc. No. 81-2, at 2.
[15] *Id.*
[16] R. Doc. No. 81-3; R. Doc. No. 81-5, at 6.

5

days have elapsed since the warden received his request for relief. Accordingly, the Court has jurisdiction to consider Mazur's motion. *See* 18 U.S.C. § 3582(c)(1)(A).

## B. Extraordinary and Compelling Reasons

Although the relevant policy statement has not been amended to reflect legislative changes brought about by the First Step Act, the policy statement remains instructive with respect to the Court's determination of whether extraordinary and compelling reasons warrant a sentence modification. In relevant part, the policy statement provides that an extraordinary condition exists if the defendant suffers from a terminal illness or another "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

Courts have also taken into account the quality of healthcare provided to the defendant while incarcerated and whether granting the defendant compassionate release would have far-reaching implications, i.e. whether a large number of incarcerated defendants could be granted early release on the same grounds. *See Beck*, 425 F. Supp. 3d at 573 (finding extraordinary and compelling reasons to grant compassionate release when the healthcare services the BOP provided to the defendant were "abysmal" and "grossly inadequate"); *Cantu*, 423 F. Supp. 3d at 353 (noting that finding that extraordinary and compelling reasons existed would not have far-reaching implications beyond the case at bar, because a lack of opposition by the government is rare); *United States v. Shields*, 12-00410, 2019 WL 2359231, at *5

(N.D. Cal. June 4, 2019), *reconsideration denied*, 2019 WL 2645028 (N.D. Cal. June 27, 2019) (failing to find extraordinary and compelling reasons to grant compassionate release, because such a conclusion would mean that "the same could be said of *any* inmate who has young children and a spouse who must work").

Mazur's illnesses are not terminal, and he does not allege that his medical conditions substantially diminish his ability to provide self-care in prison.[17] Rather, Mazur contends that the risks posed by the rapid spread of COVID-19 through his facility combined with his diagnoses of myeloid leukemia and hypertension are extraordinary and compelling reasons to warrant compassionate release.[18] The

---

[17] R. Doc. No. 81-5, at 7.

[18] *Id.* at 6–7. According to Mazur, myeloid leukemia is a serious medical condition that compromises his immune system. R. Doc. No. 81, at 4. Mazur does not provide documentation from a doctor supporting this assertion, but he notes that the Center for Disease Control and Prevention has found that people at high-risk of severe illness from COVID-19 include people who are immunocompromised by cancer. R. Doc. No. 81-5, at 7.

Mazur also avers that his conditions combined with the risks associated with COVID-19 fall within the catchall category of § 1.B1.13 cmt. 1(D). *Id.* at 7–8. Comment 1(D) of the policy statement provides the Director of the BOP with discretion to determine that extraordinary and compelling reasons exist in circumstances other than those described elsewhere in the policy statement. U.S.S.G. § 1.B1.13 cmt. 1(D). In light of the First Step Act, courts are split as to whether this discretion now rests with the courts or whether comment 1(D) is no longer part of the applicable policy statement. *Compare Cantu*, 423 F. Supp. 3d at 352 ("U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court."), *with United States v. Fox*, 14-03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) (noting that the court "treat[s] the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts"). It is unnecessary for the Court to determine what effect, if any, comment 1(D) still has, because as previously explained, the policy statement is not dispositive, and the Court has discretion to determine what constitutes an extraordinary and compelling reason. *See Cantu*, 423 F. Supp. 3d at 352; *Beck*, 425 F. Supp. 3d at 579.

7

facility at which Mazur is confined, FCI Butner Medium I, has had an outbreak of about twenty-five percent.[19]

Although the Court is sympathetic to Mazur's alleged medical conditions and the risks that contracting COVID-19 may impose, it is not persuaded that his circumstances constitute extraordinary and compelling reasons to grant compassionate release. Notably absent from Mazur's motion is any assertion that the BOP is not providing him with adequate medical care. *Cf. Beck*, 425 F. Supp. 3d at 573. Moreover, even assuming that Mazur's claim that he is immunocompromised is accurate, only a limited number of courts have granted compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on individual medical conditions that made the inmates particularly susceptible to COVID-19. Mazur's circumstances are distinguishable, as he still has six months, or twenty-five percent,[20] of his sentence remaining, and he does not assert that the facility at which he is being held is failing to take precautions to combat the spread of COVID-19.[21] *See, e.g., United States v. Muniz*, 2020 WL 1540325, at *1-2 (S.D. Tex. March 30, 2020) (granting motion where

---

[19] According to the BOP's COVID-19 website, as of May 4, 2020, 210 of the 860 inmates currently incarcerated at FCI Butner Medium I have tested positive for coronavirus. *See* https://www.bop.gov/coronavirus/ (last visited May 4, 2020); https://www.bop.gov/locations/institutions/but/ (last visited May 4, 2020) (noting that 860 inmates reside at FCI Butner Medium I).

[20] Mazur asserts, and the Court confirmed via the BOP website, that Mazur's projected release date is November 10, 2020. *See* R. Doc. No. 81-5, at 9; https://www.bop.gov/inmateloc/ (last visited May 4, 2020).

[21] Although Mazur asserts that the severity of the outbreak at FCI Butner Medium I demonstrates that the BOP is "incapable of managing the spread of COVID-19 at Butner[,]" he does not argue that the facility has failed to implement precautionary measures. R. Doc. No. 88, at 3.

inmate had, *inter alia*, end stage renal disease and had served "approximately 80 percent" of 188-month term); *United States v. Campagna*, 16-78, 2020 WL 1489829, at *1, *3 (S.D.N.Y. Mar. 27, 2020) (holding that the defendant's "compromised immune system with very low white blood cell counts" constituted an extraordinary and compelling reason to grant compassionate release when the government did not oppose the motion, the defendant's facility allegedly did not implement the appropriate social distancing measures, and the defendant had already served ninety-percent of his sentence); *United States v. Jepsen*, 19-00073, 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020) ("Mr. Jepsen is in the unique position of having less than eight weeks left to serve on his sentence, he is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19, and the Government consents to his release."); *United States v. Colvin*, 19-179, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (granting compassionate release when the defendant had diabetes and high blood pressure and eleven days remained on her sentence).

The Court does not minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Mazur. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). However, the BOP has made "extensive and professional efforts to curtail the virus's spread."[22] *See id.* Additionally, finding that Mazur's

---

[22] As the government notes, the BOP has modified its operations to combat the spread of COVID-19. *See* R. Doc. No. 85, at 8–9. These modified operations include suspending social and legal visits, suspending inmate internal movement with limited exceptions, and implementing quarantine and isolation procedures to require all newly admitted inmates to be screened for COVID-19 exposure risk factors and

medical conditions combined with the threat of COVID-19 is an extraordinary and compelling reason would potentially have far-reaching implications, as to any defendant currently incarcerated at Mazur's facility with a serious, albeit non-terminal, compromised immune system. *Cf. Cantu*, 423 F. Supp. 3d at 353; *Shields*, 2019 WL 2359231, at *5.

### C. Safety to Others and the Community

Even if the Court were to find that Mazur's circumstances presented extraordinary and compelling reasons to grant compassionate release, he still has not demonstrated that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

Mazur's criminal history includes felonies for attempted manslaughter and possession of controlled substances, as well as a misdemeanor for domestic abuse battery.[23] With respect to the misdemeanor for domestic abuse battery, Mazur

---

symptoms. *See* https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 1, 2020). Asymptomatic inmates with exposure risk factors are quarantined, and symptomatic inmates with exposure risk factors are isolated and tested for COVID-19 per local health authority protocols. *Id.*

[23] R. Doc. No. 1, at 2–3; R. Doc. No. 48, at 10–11 ¶¶ 37–39. The Court adopted the presentence investigation report as its own without change. R. Doc. No. 72, at 1.

assaulted his then-wife, injuring her neck and shoulders.[24] During the altercation that led to his arrest for attempted manslaughter, Mazur fired multiple shots from a handgun into the victim's residence.[25] In relation to the offense for which Mazur is currently incarcerated, law enforcement seized ten firearms from his residence, two of which were semiautomatic, as well as 2,825 rounds of ammunition.[26]

The nature and circumstances of the instant offense combined with Mazur's history of violent crimes demonstrate that he would be a danger to the community if released. *Cf. Perdigao,* 2020 WL 1672322, at *4 (holding that the defendant was not a danger to the community, because although he pled guilty to a number of serious crimes, none were crimes of violence or offenses involving controlled substances).

Finally, the Court notes that it took into consideration Mazur's health conditions when it sentenced him to twenty-four months in prison, well below his Guidelines range of 46 to 57 months.[27]

---

[24] R. Doc. No. 48, at 10–11 ¶ 37. Mazur's probation was revoked following his conviction for attempted manslaughter. *Id.*
[25] *Id.* at 11 ¶ 38. During Mazur's period of probation for attempted manslaughter, he was convicted of possession of a controlled substance. *Id.*
[26] *Id.* at 8 ¶¶ 20–22. Mazur's factual basis states that the government seized 2,825 rounds of ammunition, whereas the presentence investigation report states that the government seized 2,835 rounds. *Compare* R. Doc. No. 42, at 5, *with* R. Doc. No. 48, at 8 ¶ 21. The discrepancy is immaterial with respect to ruling on the instant motion.
[27] R. Doc. No. 72, at 3; R. Doc. No. 48, at 18 ¶ 79. As Mazur fails to demonstrate extraordinary and compelling reasons for compassionate release and that he would not be a danger to society if released, it is unnecessary for the Court to separately address whether the 18 U.S.C. § 3553(a) factors support a reduction in sentence.

### III.

Accordingly,

**IT IS ORDERED** that Mazur's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **DENIED**.

**IT IS FURTHER ORDERED** that Mazur's motion[28] to expedite his motion to reduce his sentence is **GRANTED**.

New Orleans, Louisiana, May 4, 2020.

                                      **LANCE M. AFRICK**
                              **UNITED STATES DISTRICT JUDGE**

---

[28] R. Doc. No. 84.